# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PFIZER INC                            )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        Civil Action No. 06-90-JJF
                                      )
SANDOZ INC. and                       )
NOVARTIS AG,                          )
                                      )
                    Defendants.       )
_____)

## PLAINTIFF PFIZER INC'S ANSWER BRIEF IN OPPOSITION TO
## DEFENDANT SANDOZ INC.'S MOTION
## TO SEVER AND TRANSFER CLAIMS AGAINST SANDOZ INC.


CONNOLLY BOVE LODGE & HUTZ LLP


/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Attorneys for Pfizer Inc*


Dated: March 20, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ....................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDING.................................... 1

III.  SUMMARY OF ARGUMENT .................................................................. 3

IV.   FACTUAL BACKGROUND..................................................................... 4

      A.    The Delaware Action is the First-Filed Action Relating to the
            Infringement and Validity of the '243 Patent .............................................. 4

      B.    The Delaware Action Involves a Patent That is Unrelated to the Patents at
            Issue in the Prior Teva New York Action Referenced by Sandoz.............. 5

      C.    The Prior Teva New York Action is Closed as to the Merits of the
            Infringement and Validity of the Different Patents There In Suit .............. 6

      D.    The Teva New York Action Involved a Different Accused Product.......... 7

      E.    The Prior Teva New York Action Never Formally Addressed the Merits of
            the Infringement and Validity of Either Patent There In Suit..................... 7

      F.    The District of Delaware is Common Ground for all the Parties and is
            Convenient to All the Parties ...................................................................... 8

      G.    Delaware is Equally, if not More, Convenient to All the Parties and Their
            Witnesses .................................................................................................... 8

V.    ARGUMENT................................................................................................ 9

      A.    Section 1404(a) Does Not Warrant Transfer ............................................ 10

      B.    The Relevant Factors Do Not Support Transfer To New York................ 11

            1.    *Pfizer's Original Choice of Delaware Should Not Be Lightly
                  Disregarded* ................................................................................ 12
                  (a)   Pfizer's had reasonable grounds to bring this case in
                        Delaware ............................................................................ 12
                  (b)   Pfizer's choice of forum outside its "home turf" remains
                        undiminished because it had reasonable ground to bring
                        this case in Delaware ......................................................... 12

            2.    *Sandoz Has No Reasonable Basis to Transfer the Case to New
                  York* ............................................................................................. 14

        (a)    Sandoz's and Teva's mirror-image New York DJ Actions are both second filed and therefore should not be given preference over the Delaware Action .............................. 14

        (b)    The Prior Teva New York Action is not related to the infringement and validity of the '243 patent.................... 14

   3.   *Delaware Is As Convenient, If Not More, As New York For All The Witnesses* .................................................................... 15

   4.   *The Location of the Evidence Favors Neither Delaware Nor New York* ........................................................................... 16

   5.   *Sandoz's Failure to File Its Compulsory Counterclaims in Delaware Means the Delaware Action Has Priority* .................... 16

   6.   *Severing the Claims Against Sandoz Would Lead to Two Cases Involving Essentially the Same Facts and Issues* .......................... 18

   7.   *There is No Conservation of Judicial Resources by Transferring This Case to New York* ................................................. 19

 C.   The Balance of Interests Weigh Heavily in Favor of Keeping This Case in Delaware ........................................................................ 19

VI.   CONCLUSION................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Affymetrix, Inc. v. Synteni, Inc.*,
28 F. Supp.2d 192, 203 (D. Del. 1998)........................................................ 15, 16

*Bayer AG v. Elan Pharmaceutical Research Corp.*,
212 F.3d 1241, 1248 (Fed. Cir. 2000)................................................................ 7

*Bell Telephone Laboratories, Inc. v. International Business Machines Corp.*,
630 F. Supp. 373, 379 (D. Del. 1984.)......................................................... 17, 18

*Bergman v. Brainin*,
512 F. Supp. 972, 973 (D. Del. 1981).............................................................. 10

*E.E.O.C. v. University of Pennsylvania*,
850 F.2d 969, 971 (3d Cir. 1988)................................................................... 14

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*,
286 F.2d 631, 634 (3d Cir. 1961)................................................................... 17

*In re ML-Lee Acquisition Fund II, L.P.*,
816 F. Supp. 973, 976 (D. Del. 1993).............................................................. 13

*Joint Stock Society v. Heublein, Inc.*,
936 F. Supp. 177, 187 (D. Del. 1996).............................................................. 13

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873, 880 (3d Cir. 1995)..................................................................... 11

*Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR,
2004 WL 883395 at *2, n.1 (D. Del April 20, 2004)........................................ 9, 15

*Shutte v. Armco Steel Corporation*,
431 F.2d 22, 25 (3d Cir. 1970)................................................................... 10, 12

*Textron Innovations, Inc. v. The Toro Co.*, No. Civ.A. 05-486 GMS,
2005 WL 2620196 at *1 (D. Del. Oct. 14, 2005) .......................................... 10, 13

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
775 F. Supp. 759, 762 (D. Del. 1991).............................................................. 10

## Statutes

28 U.S.C. § 1404(a) ............................................................................... 1, 10

35 U.S.C. § 271(b) ..................................................................................... 18

**<u>Other Authorities</u>**

15 Wright, Miller & Cooper § 3854 ............................................................................... 11

3 Moore's Federal Practice § 13.14[2] at 13.87 (2d ed. 1984) ........................................ 17

## I.    INTRODUCTION

Plaintiff Pfizer Inc ("Pfizer") respectfully submits this brief in opposition to defendant Sandoz Inc.'s ("Sandoz") Motion to Sever and Transfer Claims Against Sandoz Inc. (hereinafter "motion to transfer") to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (D.I. 8). For all the reasons stated below, Sandoz has not shown sufficient cause to overcome Pfizer's choice to initiate its claim in the District of Delaware. Therefore, Sandoz's motion to transfer should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

Pfizer filed its complaint against Sandoz and Novartis AG ("Novartis") on February 8, 2006 (the "Delaware Action") (D.I. 1). In the Delaware Action, Pfizer alleged, *inter alia*, that Sandoz's importation and sale of generic azithromycin products in the United States infringe Pfizer's U.S. Patent No. 6,977,243 ("the '243 patent") (D.I. 1, ¶¶ 19-45). The '243 claims are directed to azithromycin sesquihydrate.[1] (D.I. 1, ¶ 17).

Also on February 8, 2006, Pfizer commenced another action in the District of Delaware against Teva Pharmaceuticals USA, Inc. and its parent Teva Pharmaceutical Industries Ltd. (respectively, "Teva USA" and "Teva Ltd.", collectively "Teva"), alleging that those defendants also infringed claims of the '243 patent. *Pfizer Inc v. Teva Pharmaceuticals USA et al.*, No. 1:06-cv-00089-GMS (Mulveny Decl. at ¶ 2, Ex. A). On February 16, 2006, after the *Teva* and *Sandoz* cases had been assigned to different judges, Pfizer alerted the Court about the pendency of the *Teva* and *Sandoz* cases and their separate judge assignments (D.I. 4; Mulveny Decl. at ¶ 3, Ex. B).

---

[1] Azithromycin is a highly effective antibiotic in the treatment of a broad range of bacterial infections. The '243 patent is directed to a novel crystalline form of azithromycin.

On February 16, 2006, eight days after Pfizer commenced the Delaware Action, Sandoz (only, not Novartis) filed a declaratory judgment complaint seeking a declaration of non-infringement and invalidity of the '243 patent in the United States District Court for the Southern District of New York (the "Sandoz DJ Action") (D.I. 9, Ex. E).[2] The Sandoz DJ Action is based on essentially the same set of facts as raised by Pfizer in its first-filed Delaware Action and it raises the same defenses to infringement and validity as asserted by Sandoz in the Delaware Action (*Id.*).

Sandoz answered Pfizer's Delaware Action complaint on March 6, 2006 (D.I. 6). Sandoz denied infringement and raised the affirmative defenses of failure to state a claim for which relief can be granted, noninfringement, invalidity, and unenforceability (D.I. 6). Curiously, Sandoz chose not to present its compulsory counterclaims for declaratory judgment that it raised in the Sandoz DJ Action (*Id.*).

Novartis, Sandoz's parent, is located in Switzerland and Pfizer is effecting service via international convention. Although asked to accept service for Novartis, Sandoz's litigation counsel has refused stating that they do not represent Novartis (Mulveny Decl. at ¶ 4, Ex. C).

Pfizer answered the Sandoz DJ Action complaint on March 8, 2006 and additionally filed counterclaims against Sandoz for patent infringement mirroring the claims Pfizer made in its first-filed Delaware Action (Mulveny Decl. at ¶ 5, Ex. D). Sandoz's answer to these counterclaims is due March 28, 2006.

---

[2] After Pfizer sued Teva in this Court, Teva second filed a complaint against Pfizer seeking declaratory judgment relief in the Southern District of New York on February 14, 2006. *Teva Pharmaceuticals USA, Inc. v. Pfizer Inc*, 06cv1134 (the "Teva DJ Action"). Teva moved to transfer the 1:06-cv-00089-GMS case to New York on February 23, 2006. Pfizer filed its opposition to this motion and also filed a contingent motion to enjoin Teva from proceeding in the Teva DJ Action on March 9, 2006.

Pfizer has asked whether Sandoz would agree to dismiss the Sandoz DJ Action if its motion to transfer were denied by this Court. Sandoz refused. Thus, Pfizer was required to file a contingent motion to enjoin Sandoz from proceeding with the Sandoz DJ Action.

Presently before this Court is Sandoz's motion to transfer venue to the Southern District of New York (D.I. 8). In support of its motion, Sandoz filed an opening brief ("OpenBr") (D.I. 9). Because Sandoz failed to provide any reasonable basis to overcome Pfizer's choice to initiate its claims based on the '243 patent in Delaware, Sandoz's motion to transfer to the Southern District of New York should be denied.

## III.    SUMMARY OF ARGUMENT

1.    In considering a motion to transfer, the paramount consideration for the Court is Pfizer's choice to bring this action in the District of Delaware. Sandoz has the heavy burden to show why transfer to the Southern District of New York is warranted. Sandoz has failed to meet this burden.

2.    The interests of justice are not promoted by transferring this case to New York. Sandoz identifies three other pending cases as the basis for its motion to transfer. Two of these cases are the second-filed declaratory judgment actions by both Teva and Sandoz brought against Pfizer based on the same issues in dispute in this Court. Pfizer has moved to enjoin both of these cases due to their second-filed status. The remaining litigation in the Southern District of New York is the prior litigation between Teva and Pfizer (the "Teva New York Action") that involved different patents, different products and different questions of infringement, validity and enforceability. Sandoz (and Novartis) are not parties to the Teva New York Action. The prior Teva New York Action

is effectively closed as to the merits of the infringement and validity issues. Thus, there is no rational basis to transfer this case to New York as the only related cases were second-filed, and the preexisting case is unrelated to the infringement and validity of the '243 patent.

        3.     Sandoz presents no compelling evidence showing that New York is more convenient to the parties and witnesses than Delaware. All of the domestic parties are centrally located around Delaware. Transportation into and out of Wilmington is at least as convenient as in New York. The expected relevant documents at this time are believed to be located in Connecticut, New Jersey, and/or Colorado. Thus, there is no advantage to being in New York. And Sandoz has not shown that any important witness would not be available for trial in Delaware but otherwise would be available in New York.

        4.     On balance, Sandoz's weak allegations of judicial economy and inconvenience fall far short of outweighing Pfizer's reasonable choice to litigate this first-filed case in Delaware.

## IV.    FACTUAL BACKGROUND

### A.    The Delaware Action is the First-Filed Action Relating to the Infringement and Validity of the '243 Patent

As stated above, Pfizer filed the Delaware Action on February 8, 2006 charging infringement of the '243 patent. Eight days later, Sandoz reacted by filing the mirror-image Sandoz DJ Action in the Southern District of New York.[3] Therefore, both the Delaware Action and Pfizer's suit against Teva in this Court (1:06-cv-00089-GMS) are undeniably the first-filed cases relating to the infringement and validity of the '243 patent.

---

[3] Similarly, Teva second-filed the "Teva DJ Action" on February 14, 2006, six days after Pfizer filed its case against Teva in Delaware

**B.    The Delaware Action Involves a Patent That is Unrelated to the Patents at Issue in the Prior Teva New York Action Referenced by Sandoz**

In contrast to the Delaware Action, the prior Teva New York Action -- which was instituted by Teva seeking declaratory judgment relief and not by Pfizer -- involved different patents (Woodard Decl. at ¶ 2). After its efforts to dismiss Teva's complaints failed, Pfizer filed compulsory counterclaims in the Teva New York Action asserting that the two involved patents, U.S. Patent Nos. 5,605,889 ("the '889 patent"; Mulveny Decl. at ¶ 6, Ex. E) and 6,268,489 ("the '489 patent"; Mulveny Decl. at ¶ 6, Ex. F), were infringed by Teva's ANDA product (Woodard Decl. at ¶¶ 2-4). The '489 patent claimed azithromycin dihydrate, a compound that is patentably distinct from azithromycin sesquihydrate that is claimed by the '243 patent at issue in the instant case (*compare* the '489 patent claims [Mulveny Decl. Ex. F] and the '243 patent claims [D.I. 1, Ex. B]). The '889 claims certain oral dosage forms of azithromycin, again patentably distinct from the '243 claims to azithromycin sesquihydrate at issue here (*compare* the '889 patent claims [Mulveny Decl. Ex. E] and the '243 patent claims [D.I. 1, Ex. B]).

Similarly, the prior Eon Labs, Inc. ("Eon") case against Pfizer, 05cv0002-LAP (the "Eon New York Action") mentioned by Sandoz, was initiated by Eon, and not Pfizer, in the Southern District of New York. The Eon New York Action also did not involve any issues regarding the infringement, enforceability or validity of the '243 patent. Rather, Eon sought declaratory relief against Pfizer's '489 patent. The Eon New York Action was ultimately dismissed more than four months ago for lack of a case or controversy and is no longer active (OpenBr at 4-5).

Sandoz incorrectly states that the prior Teva New York Action involved related patents to the instant case. The '489, '889, and '243 patents are not related. The three patents do not arise from a common patent application. Further, the '489, '889, and '243 patents do not share common inventors. In sum, there is no commonality between the '489, '889, and '243 patents other than the basic facts that all of the patents are generally directed to azithromycin and all of the patents are owned by Pfizer. Beyond that, the patents are legally and factually distinct, issuing at different times, based on different applications, claiming different inventions which implicate different prior art and different infringement issues.

### C.    The Prior Teva New York Action is Closed as to the Merits of the Infringement and Validity of the Different Patents There In Suit

While the prior Teva New York Action is technically still pending, the case is in fact closed as to the merits of the infringement and validity issues (Woodard Decl. at ¶ 7). Because Pfizer granted Teva covenants not to sue, all of the parties' claims and counterclaims related to the merits of the infringement and validity of the patents there in suit were dismissed/denied as moot (Woodard Decl. at ¶¶ 4, 6, 7). The only remaining issue in the Teva New York Action is Teva's § 285 claim for attorney fees, a highly questionable claim given that Teva, not Pfizer, instituted the litigation and Pfizer repeatedly sought to dismiss it, ultimately providing covenants not to sue to dispose of the litigation (Woodard Decl. at ¶ 7). Regardless, Teva's § 285 claim does not depend on the same issues that will be addressed in this case.  Sandoz, of course, is a complete stranger to the Teva New York Action.

### D.    The Teva New York Action Involved a Different Accused Product

The prior Teva New York Action was directed to the question of whether the products defined by Teva's ANDA specifications would, if marketed, infringe the '489 and '889 patents (Woodard Decl. at ¶¶ 2-4). Teva's ANDA products at issue were hypothetical products that Teva would likely sell if the FDA approved the ANDA. *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1248 (Fed. Cir. 2000) ("The focus, under § 271(e)(2)(A), is on "what the ANDA applicant will likely market if its application is approved, an act that has not yet occurred.") (citation omitted). The probable nature of the ANDA products was defined by Teva's ANDA specifications that were submitted to the FDA and not by an actual, commercial product already on the market. *Id.*

In contrast, in the Delaware Action, Sandoz has products on the market.  Pfizer contends that Sandoz's actual, commercially marketed, generic azithromycin products, which are not the same as Teva's hypothetical ANDA products (or Teva's commercial products), infringe the '243 patent. Without a doubt, Sandoz's actual generic azithromycin products and Teva's ANDA products are two separate and unique things. Each company separately sought approval for its products from the FDA and, as far as Pfizer knows, each makes its own products.

### E.    The Prior Teva New York Action Never Formally Addressed the Merits of the Infringement and Validity of Either Patent There In Suit

In its Opening Brief, Sandoz points to the prior Teva New York Action as a reason to transfer this case to New York (OpenBr at 4). However, Sandoz fails to explain that the prior Teva New York Action did not address the infringement and validity of the

'243 patent at issue before this Court. Rather, the prior Teva New York Action involved Pfizer's '489 and '889 patents (Woodard Decl. at ¶¶ 2-4). Further, Sandoz fails to mention that Judge Preska, who is assigned to the Teva New York Action, may not have actually considered any of the merits, legal or technical, regarding the infringement or validity of the '489 or '889 patents. In fact, Judge Preska simply denied as moot <u>all</u> of the related motions based on Pfizer's covenants and she never held or even scheduled any hearings regarding those motions (Woodard Decl. at ¶¶ 5, 6). Thus, it is likely that Judge Preska never familiarized herself with the briefed issues. And in any event, since these issues do not relate to the '243 patent, even if Judge Preska did review these briefs, there is very little that would be applicable to the issues in this case.

### F.   The District of Delaware is Common Ground for all the Parties and is Convenient to All the Parties

Pfizer is a Delaware corporation (D.I. 1, ¶¶ 1; D.I. 6 ¶¶ 1). Pfizer has appeared in Delaware on multiple occasions in the past (Mulveny Decl. at ¶ 7, Ex. G). All of the domestic parties involved in these cases are centrally located around Delaware. Pfizer's headquarters are based in New York city, but the underlying research related to the '243 patent was conducted in Groton, Connecticut (D.I. 1, ¶ 1). Sandoz is based in Princeton, New Jersey (D.I. 1, ¶ 6; D.I. 6, ¶ 6). Delaware is common ground to both parties. It logically follows, and Sandoz has not shown otherwise, that Delaware is easily, and equally, accessible to the parties.

### G.   Delaware is Equally, if not More, Convenient to All the Parties and Their Witnesses

The District of Delaware Courthouse, located in downtown Wilmington Delaware, is easily accessed by planes, trains, and automobiles. Interstate 95 passes right

8

through the city (Mulveny Decl. at ¶ 9, Ex. I). The train station, located mere blocks from

the courthouse, provides ready access to the trains running in the Northeast Corridor

including stops in Trenton and Princeton, New Jersey (*Id.*). The Philadelphia

International Airport can be reached within an hour, usually less. *See Praxair, Inc. v.

ATMI, Inc.*, No. Civ. 03-1158-SLR, 2004 WL 883395 at *2, n.1 (D. Del April 20, 2004)

(finding that "travel time to the airport may be done in under a half hour from downtown

Wilmington").

## V.    ARGUMENT

Sandoz presents two basic arguments to support its motion: (1) the interests of

justice allegedly would be better served because of three "related" cases pending in the

Southern District of New York; and (2) Pfizer had no legitimate basis to bring this case in

Delaware.  The first argument is meritless because two of the allegedly related cases are

reactive, second-filed mirror-image declaratory judgment actions by Sandoz and Teva,

and the third is the remnant of a prior litigation between Teva and Pfizer -- involving

entirely different patents and products, and completely different issues on infringement

and validity.  The second argument fails in view of the facts that Pfizer is incorporated

here, Sandoz's headquarters is in nearby Princeton, New Jersey, and Sandoz has admitted

to selling the accused products in Delaware.

As explained in detail below, Sandoz's asserted grounds do not outweigh Pfizer's

choice to bring its action regarding the '243 patent in the District of Delaware. Thus

Sandoz has not met its burden under § 1404(a) to warrant transfer to the Southern District

of New York.

### A.     Section 1404(a) Does Not Warrant Transfer

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In considering a motion for transfer pursuant to § 1404(a), the Third Circuit holds that: "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted). The Court has held that "[i]t is the movant's burden to establish the need to transfer, and the plaintiff's choice of venue will not be lightly disturbed." *Textron Innovations, Inc. v. The Toro Co.*, No. Civ.A. 05-486 GMS, 2005 WL 2620196 at *1 (D. Del. Oct. 14, 2005) (citations and internal quotations omitted). "In other words," the Court held, "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail." *Textron Innovations*, 2005 WL 2620196 at *1 (citing *Shutte*, 431 F.2d at 25. *See also Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 762 (D. Del. 1991) (holding that the movant "bears the burden of proving that justice requires a substitute forum and a transfer is not to be liberally granted"). Accordingly, Sandoz has the heavy burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981).

Additionally, this is not a matter of transferring venue from Delaware to another court on the other side of the country or to the defendants' hometown. Rather, Sandoz demands the case be transferred a couple hours up the road to a jurisdiction where it has

little, if any, significant contact. Courts often deny such requests outright on the basis that § 1404(a) was not intended for transfers to nearby districts. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) (finding that some courts refuse to transfer cases under § 1404(a) where the target forum "is a relatively short distance from the original forum.") (citing 15 Wright, Miller & Cooper § 3854 at 470).

### B.    The Relevant Factors Do Not Support Transfer To New York

In reviewing a motion to transfer, courts have not limited their consideration to the three enumerated factors in § 1404(a). Rather, courts will consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citations and internal quotations omitted). In *Jumara*, the Third Circuit identified a number of public and private factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.*

In this case, the following factors are relevant to Sandoz's motion: (1) Pfizer's original choice of Delaware; (2) Sandoz's desire to transfer the case to New York; (3) the convenience of the witnesses, but only to the extent that they may be unavailable for trial; (4) location of the evidence; (5) Sandoz's failure to make its compulsory counterclaims in its answer to the Delaware Action; (6) severance of the claims against Sandoz would lead to two cases involving essentially the same facts and issues; and (7) the conservation of judicial resources.

1.    *Pfizer's Original Choice of Delaware Should Not Be Lightly Disregarded*

As the Third Circuit found in *Schutte*, Pfizer's original choice to bring this action in Delaware is the paramount consideration for the Court. All the remaining considerations must weigh against the strong presumption that the case is properly quartered in the District of Delaware.

(a)    **Pfizer's had reasonable grounds to bring this case in Delaware**

Pfizer had several reasonable and practical reasons to bring this case to the District of Delaware. Pfizer is incorporated in Delaware. It has existing working relationships with Delaware attorneys, including the undersigned counsel. Pfizer has previously litigated patent cases in the District of Delaware and has found the Court to be both a competent and convenient forum. Since 1983, Pfizer has been a party to 79 District of Delaware litigations (Mulveny Decl. at ¶ 7, Ex. G).

Pfizer's selection of Delaware is entirely reasonable because Delaware is centrally located among everyone's headquarters: Pfizer's headquarters is in New York, New York and Sandoz is based in Princeton, New Jersey. Thus, Delaware is easily, and equally, accessible to all the parties.

(b)    **Pfizer's choice of forum outside its "home turf" remains undiminished because it had reasonable ground to bring this case in Delaware**

Sandoz suggests that Pfizer should be denied its original choice to bring this case in Delaware because Pfizer's corporate headquarters is located in New York, and thus Pfizer lacks a local connection to this Court (OpenBr at 10). While Pfizer's headquarters is indeed located in New York and the underlying research was conducted in Connecticut, this in itself does not substantially diminish the strong presumption that this

case must stay in Delaware. *See In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993) (stating that "[w]hile transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.") (citation omitted). Additionally, because Pfizer has many rational reasons for bringing this case in Delaware, the mere fact that Pfizer has its headquarters in New York does not merit transfer. *Textron Innovations*, 2005 WL 2620196 at *1 ("[I]t is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum.") (citing *Joint Stock Society v. Heublein, Inc.*, 936 F. Supp. 177, 187 (D. Del. 1996)).

Further, in its complaint, Pfizer specifically alleged that Sandoz's infringing activities occurred or are occurring in Delaware (D.I. 1, ¶¶ 23, 37, 38, 42, 43). Sandoz has admitted that it is indeed marketing the accused products in the State of Delaware (OpenBr at pp. 11 n.10).

In sum, the strong presumption that the case must stay in Delaware -- Pfizer's original choice of forum -- is bolstered by Pfizer's and Sandoz's admitted contacts with this forum. This presumption is not substantially diminished by the fact that Pfizer's headquarters is in nearby New York. Thus, the heavy burden remains on Sandoz to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

13

2.      ***Sandoz Has No Reasonable Basis to Transfer the Case to New York***

For all of its arguments that Pfizer had no reasonable basis to have brought this suit in Delaware, Sandoz never provides any credible reason why it requires the case to be transferred to New York.

**(a)      Sandoz's and Teva's mirror-image New York DJ Actions are both second filed and therefore should not be given preference over the Delaware Action**

Sandoz relies on the second-filed mirror-image Sandoz DJ Action as a key reason for transferring this case to New York. Unfortunately for Sandoz, the first-filed rule requires that both the Sandoz DJ Action and the Teva DJ Action should be enjoined. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). Based on its first-filed status, Pfizer has moved concurrently to enjoin Sandoz from proceeding in the New York Sandoz DJ Action. For the same reasons, Pfizer has moved to enjoin Teva from proceeding in the Teva DJ Action in the 1:06-cv-00089-GMS case (Mulveny Decl. at ¶ 8, Ex. H). Thus, the Sandoz DJ Action is not a safe harbor for Sandoz. Sandoz has no rational basis to transfer this case to New York.

**(b)      The Prior Teva New York Action is not related to the infringement and validity of the '243 patent**

Sandoz's reliance on the prior Teva New York Action as a credible basis to transfer this case is misplaced. While the prior Teva New York Action involved Teva's ANDA product, it did not involve the '243 patent and it did not involve Teva's actual commercial products (Woodard Decl. at ¶¶ 2-4). It certainly did not involve Sandoz's actual commercial products at issue in this case. And the jurisdictional basis for this case is the infringement of the '243 patent by Sandoz's commercial products, not unrelated patents that Teva placed in issue by suing Pfizer in New York seeking declaratory

judgment relief based on its ANDA. Further, Sandoz never argues, because it cannot, that

the Teva New York Action involved the adjudication of the infringement and validity of

the '243 patent, or for that matter, actual adjudication on the merits of the infringement

and validity of any patent.

### 3. *Delaware Is As Convenient, If Not More, As New York For All The Witnesses*

This Court has held that the convenience of party witnesses or witnesses who are

employed by a party carry no weight in the "balance of convenience" analysis because

each party is able, indeed obligated, to procure the attendance of its own employees for

trial. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d 192, 203 (D. Del. 1998). In

contrast to party witnesses, fact witnesses who possess first-hand knowledge of the

events giving rise to the lawsuit weighs quite heavily in the "balance of convenience"

analysis. *See id.* Further, the convenience of the witnesses is only relevant to the extent

that they might be unavailable for trial, something which Sandoz has not shown to be the

case here. *Praxair*, 2004 WL 883395 at *2.

Sandoz argues that the '243 patent inventors are not located in Delaware (OpenBr

at 6-7). However, Sandoz does not argue that the '243 patent inventors would be

unavailable for trial in Delaware but otherwise available for trial in New York. Similarly,

Sandoz's complaint that the Pfizer prosecuting attorneys are in New York and

Connecticut fails to address the real issue -- whether the witnesses are unavailable in

Delaware. In any event, Pfizer is obligated to bring its witnesses to the forum where it

filed suit. Thus, Sandoz's complaints about the witnesses being outside of Delaware are

baseless.

Incredibly, Sandoz further alleges that it is willing to produce its witnesses and documents in the Southern District of New York, but complains that Delaware would be inconvenient (Pomerantz Decl., [D.I. 9, Ex. C] at ¶¶ 6-7). It is hard to imagine what could possibly prevent these same witnesses and documents from traveling the short distance to Delaware. It seems <u>Sandoz</u>, not Pfizer, is the party having a preference to be elsewhere. *Affymetrix*, 28 F. Supp.2d at 201.

Finally, Sandoz has presented no evidence that any witnesses that are essential for trial would in fact be unavailable for trial in the District of Delaware but are otherwise available in the Southern District of New York.

### 4.    *The Location of the Evidence Favors Neither Delaware Nor New York*

The location of the evidence in this case is of little value in tipping the scales between Delaware and New York.[4] The '243 inventors are presumed to be located in Connecticut (OpenBr at 6-7). Sandoz alleges that its likely witnesses are located in New Jersey and/or Colorado (*Id.*). Presumably, the documents related to these individuals' activities would then be located in Connecticut, New Jersey, or Colorado. Therefore, New York provides no more convenience than Delaware in terms of the location of the relevant documents. Nor does New York have any more connection to these documents than Delaware.

### 5.    *Sandoz's Failure to File Its Compulsory Counterclaims in Delaware Means the Delaware Action Has Priority*

In its answer in the Delaware Action, Sandoz failed to file any compulsory counterclaims for declaratory judgment (D.I. 6). Instead, Sandoz elected to file these claims in the Sandoz DJ Action (D.I. 9, Ex. E). This Court holds that "[w]hen a party

---

[4] Pfizer notes that formal discovery has not yet begun, so at this stage, both parties are guessing as to the likely location of the relevant documents.

violates Rule 13(a) by bringing a second action rather than filing a compulsory counterclaim in the first action, '[n]ormally, the first suit should have priority, absent a showing of a balance of convenience in favor of the second action.'" *Bell Telephone Laboratories, Inc. v. International Business Machines Corp.*, 630 F. Supp. 373, 379 (D. Del. 1984.) (quoting 3 Moore's Federal Practice § 13.14[2] at 13.87 (2d ed. 1984)). Thus, Sandoz's failure to make these compulsory counterclaims in the Delaware Action undermines its argument that the Sandoz DJ Action should be given priority and that this case should be transferred to New York.

Sandoz's declaratory judgment claims are compulsory counterclaims. Rule 13(a) requires a party to raise as a compulsory counterclaim "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The Third Circuit set forth the standard for determining whether a claim is a compulsory counterclaim in *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). In *Great Lakes*, the court determined that the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. *Great Lakes*, 286 F.2d at 634. Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties. *Bell Telephone Laboratories*, 630 F. Supp. at 379.

The Sandoz DJ Action declaratory judgment claims are essentially the mirror-image of Pfizer's claims against Sandoz in the Delaware Action. Therefore, there is no

question that Sandoz's declaratory judgment claims were compulsory counterclaims. These claims should have been raised in answering the Delaware Action because they involve the same factual and legal issues, and stem from the same basic controversy between the parties. Accordingly, pursuant to *Bell Telephone Laboratories*, the Delaware Action has priority over the Sandoz DJ Action.

### 6. *Severing the Claims Against Sandoz Would Lead to Two Cases Involving Essentially the Same Facts and Issues*

Sandoz's request to sever Pfizer's claims against it leaves Pfizer's claims against Novartis remaining in this Court. Pfizer sued Novartis for actively inducing Sandoz's sale of infringing generic azithromycin products in Delaware pursuant to 35 U.S.C. § 271(b). (D.I. 1, ¶¶ 31-35, 41-45). At trial, Pfizer intends to show not only that Sandoz infringes the '243 patent, but also that Novartis actively induced Sandoz to infringe the '243 patent. Severing the claims against Sandoz would create two pending cases where only one was filed by Pfizer.

In its brief, Sandoz attempts to speak for Novartis (thus, allowing Novartis to remain outside the case until formally served) by arguing that this Court lacks personal jurisdiction over Novartis (OpenBr at 2, 12-13).[5] If that is indeed Novartis' position, Pfizer demands that jurisdictional discovery be permitted to fully explore Novartis' claim that no personal jurisdiction exists in this Court. If Sandoz's request to sever is granted, and this Court finds that it does have jurisdiction over Novartis, then there will indeed be two pending cases involving essentially the same facts and issues.

---

[5] Novartis declined to waive formal service thereby requiring Pfizer to serve Novartis with the complaint via the Hague Convention pursuant to Rules 4(h)(2) and 4(f)(1) (Mulveny Decl. at ¶ 4, Ex. C). In refusing to accept service for Novartis, Sandoz told Pfizer that it has "no authority to make any representations on Novartis' part." (*Id.*).

Sandoz further speaks for Novartis by arguing that Pfizer's claims of inducement fail as a matter of law. Pfizer objects to these arguments as they are clearly addressing the merits of its claims against Novartis. If Novartis wants to dispute Pfizer's claims against it, then it should appear in this Court to do so rather than litigate through its subsidiary. Moreover, Sandoz's argument that Pfizer alleged only that Novartis induced Sandoz to file the ANDAs is incorrect (OpenBr at pp. 13 n.15). Pfizer alleged that Novartis induced Sandoz to engage in activities relating to the importation, manufacture, use, sale or offer for sale of the infringing products. (D.I. 1, ¶¶ 33 and 43). As a matter of law, Pfizer's claims against Novartis are valid and Pfizer is entitled to pursue them against Novartis in this Court.

### 7.    *There is No Conservation of Judicial Resources by Transferring This Case to New York*

Finally, as fully-explained above, Sandoz has not shown that there will be in fact any conservation of judicial resources by transferring this case to the Southern District of New York. Further, Sandoz has not shown why this Court would be unreasonably burdened or incapable of familiarizing itself with the technological issues in this case.

### C.    The Balance of Interests Weigh Heavily in Favor of Keeping This Case in Delaware

In view of the six factors discussed above, it is clear that Sandoz has not overcome the strong presumption that Pfizer properly brought this case in Delaware. Pfizer had ample reasons to bring this case in Delaware. In addition, all the domestic parties are centrally located around Delaware.

There is no judicial economy in transferring this case to New York. Of the three "related" cases pending in New York, two of those are second-filed declaratory judgment

19

actions. Pfizer has requested the Court to enjoin both Sandoz and Teva from proceeding in those cases based on their second-filed status. The remaining case in New York is the prior Teva New York Action, which is, for all intents and purposes, closed. Further, the prior Teva New York Action involved totally different patents. Thus, the Teva New York Action did not involve the infringement and validity of the '243 patent.

Sandoz has not shown any compelling reasons why New York would be more convenient than Delaware for the witnesses. Both Delaware and New York are easily accessible for all the likely witnesses. Sandoz incredibly argues that its witnesses would be available in New York, but would be inconvenienced by coming to Delaware. Further, Sandoz has not alleged that any witnesses would be in fact be unavailable for trial in Delaware, but would otherwise be available in New York. Upon consideration of the objective facts -- the relatively smaller size of Wilmington compared to New York and the closer proximity of the District of Delaware Courthouse to the train station, airport, and highways -- the evidence shows that the case is best left in Delaware for the convenience of the parties and witnesses.

Finally, severing the claims against Sandoz would leave Pfizer's related claims against Novartis pending in this Court. The interests of justice are not served by having one case relating to Sandoz's infringement and another case relating to Novartis' active inducement of Sandoz's infringement.

In sum, none of the arguments made by Sandoz, even assuming they are correct, which they are not, would outweigh Pfizer's original choice of bringing its action related to the infringement of the '243 patent in Delaware.

## VI.     CONCLUSION

Accordingly, for all the above reasons, Sandoz's motion to transfer should be denied.

CONNOLLY BOVE LODGE & HUTZ LLP


<u>/s/ Rudolf E. Hutz</u>
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Attorneys for Pfizer Inc*


Dated: March 20, 2006

452378_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2006, I electronically filed **PLAINTIFF PFIZER INC'S ANSWER BRIEF IN OPPOSITION TO DEFENDANT SANDOZ INC.'S MOTION TO SEVER AND TRANSFER CLAIMS AGAINST SANDOZ INC.** with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

> Frederick L. Cottrell, III
> Matthew W. King
> Richards, Layton & Finger
> One Rodney Square
> 920 N. King Street
> P.O. Box 551
> Wilmington, DE 19899

I hereby certify that on March 20, 2006, I have mailed by First Class Mail, the document(s) to the following non-registered participants:

> Kelly L. Morron                    Douglass C. Hochstetler
> Schiff Hardin LLP                  Andrew M. Alul
> 623 Fifth Ave                      Kathryn S. Devin
> 28th Floor                         Schiff Hardin LLP
> New York, NY 10022                 6600 Sears Tower
>                                    Chicago, IL  60606

> /s/ Rudolf E. Hutz
> Rudolf E. Hutz (#484)
> Daniel C. Mulveny (#3984)
> 1007 N. Orange Street
> P. O. Box 2207
> Wilmington, DE 19899-2207
> (302) 658-9141
> *Attorneys for Pfizer Inc*

452378_1.DOC

**EXHIBIT 1**

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
PRAXAIR, INC. and Praxair Technology, Inc.,
Plaintiffs,
v.
ATMI, INC. and Advanced Technology Materials,
Inc., Defendants.
**No. Civ. 03-1158-SLR.**

April 20, 2004.

Jack B. Blumenfeld, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Plaintiffs.
Robert H. Richards, III, Richards, Layton & Finger,
Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.
*1 At Wilmington, this 20th day of April, 2004,
having reviewed the motion of defendants to
transfer (D.I.12), and the memoranda submitted
therewith;

IT IS ORDERED that the motion to transfer
(D.I.12) is denied for the reasons that follow:

1. On January 9, 2004, plaintiffs filed the present
action asserting that defendants infringe U.S. Patent
Nos. 5,937,895, 6,007,609, and 6,045,115
(collectively the "Praxair patents"). (D.I.1) On
March 8, 2004, defendants filed their answer,
denying plaintiffs' claims of infringement and
counterclaiming for declaratory judgment of
invalidity and noninfringement of the Praxair
patents. (D.I.10) A scheduling conference was held
on April 8, 2004.

2. Plaintiffs and defendants are Delaware
corporations and all parties are headquartered in
Danbury, Connecticut. (D.I.1) The Praxair patents

relate to a fluid storage and gas dispensing system
for fabricating semiconductor devices. Prior to
plaintiffs filing the present action, defendants
brought suit in the Southern District of New York
on defendants' patents, U.S. Patent Nos. 6,101,816
and 6,3543,476 BI (collectively the "ATMI patents"
). That suit, filed on July 11, 2003, has subsequently
been amended to include state law claims relating to
false advertising and unfair competition. Discovery
began in the New York litigation in February 2004.

3. Defendants move the court to transfer this matter
pursuant to 28 U.S.C. § 1404(a) to the United States
District Court for the Southern District of New
York. Section 1404(a) provides: "For the
convenience of the parties and witnesses, in the
interests of justice, a district court may transfer any
civil action to any other district or division where it
might have been brought." 28 U.S.C. § 1404(a)
<A HREF="http://www.westlaw.com/Find

Westlaw.

Slip Copy

Slip Copy, 2005 WL 2620196 (D.Del.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
TEXTRON INNOVATIONS INC., Plaintiff,
v.
THE TORO COMPANY, Defendants.
No. Civ.A. 05-486 GMS.

Oct. 14, 2005.

Edmond D. Johnson, The Bayard Firm, Richard L.
Horwitz, Potter Anderson & Corroon, LLP,
Wilmington, DE, for Plaintiff.
Richard L. Horwitz, David Ellis Moore, Potter
Anderson & Corroon, LLP, Wilmington, DE, for
Defendants.

*MEMORANDUM*

SLEET, J.

### I. INTRODUCTION

*1 On July 12, 2005, the plaintiff, Textron
Innovations Incorporated ("TII") filed the
above-captioned action against The Toro Company (
"Toro"), alleging infringement of United States
Patent Nos. 6,047,530,6,336,311, and 6,336,312,
which are directed to a gang type rotary mower.
Presently before the court is Toro's motion to
transfer this action to the District of Minnesota,
pursuant to 28 U.S.C. § 1404(a). For the following
reasons the court will deny the motion.

### II. BACKGROUND

On July 12, 2005, TII filed the present patent
infringement action involving technology related to
the rotary mower used to cut golf course roughs. TII
is the subsidiary of Textron Inc., and the assignee of
the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I.

19, at 2.) TII is incorporated in Delaware and
maintains its headquarters in Providence, Rhode
Island. (D.I. 1 ¶ 3.) Toro is a Delaware corporation
that maintains its headquarters in Bloomington,
Minnesota. (*Id.* ¶ 4.) Toro's allegedly infringing
products are manufactured in Tomah, Wisconsin.
(D.I. 6, at 3.)

On August 15, 2005, Toro filed a separate action in
Minnesota against Textron, Inc. and Jacobsen, a
division of Textron, Inc., alleging that their
products infringe two Toro patents relating to
hydraulic drive system technology for riding
mowers. The following day, Toro filed this motion
to transfer venue to the District of Minnesota.

### III. DISCUSSION

Pursuant to Section 1404(a), the court may transfer
a civil action "for the convenience of parties and
witnesses, in the interest of justice, ... to any other
district ... where it might have been brought." 28
U.S.C. § 1404(a). It is the movant's burden to
establish the need to transfer, and "the plaintiff's
choice of venue [will] not be lightly disturbed."
*Truth Hardware corp. v. Ashland Prods., Inc.,* No.
C.A. 02-1541 GMS, 2003 WL 118005, at *1
(quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d
873, 879 (3d Cir.1995)). In other words, "unless the
balance of convenience strongly favors a transfer in
favor of defendant, the plaintiff's choice of forum
should prevail." *Shutte v. Armco Steel Corp.,* 431
F.2d 22, 25 (3d Cir.1970).

When considering a motion to transfer, the court
must determine "whether on balance the litigation
would more conveniently proceed and the interest
of justice be better served by transfer to a different
forum." *Jumara,* 55 F.3d at 879. This inquiry
requires "a multi-factor balancing test," embracing
not only the statutory criteria of convenience of the
parties and the witnesses and the interest of justice,
but all relevant factors, including certain private and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 2620196 (D.Del.)
**(Cite as: Slip Copy)**

public interests. *Id.* at 875. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of books and records, to the extent that they could not be produced in the alternative forum. FN1 *Id* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80.

> FN1. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

*2 Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 187 (D.Del.1996). In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.,* No. Civ. A. 01-309-JJF, 2002 WL 500920, at *2 (D.Del. Mar.26, 2002). Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any

inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc.,* 499 F.Supp. 241 (D.Del.1980). Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should consider the location of books and records in its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879. Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

Toro also contends that non-party witness convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 19, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No C.A. 02-1541 GMS, 2003 WL 118005, at *2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                Page 3

**Slip Copy, 2005 WL 2620196 (D.Del.)**
**(Cite as: Slip Copy)**

testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

*\*3* Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505, 513 (D.Del.1999) (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at \* 3 (D.Del. Feb.17, 2004) . The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court concludes that public interest factors do not favor transfer in the instant case.

*ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. The defendant's Motion to Transfer the Case to the United States District Court for the District of Minnesota (D.I.5) is DENIED.

D.Del.,2005.
Textron Innovations, Inc. v. The Toro Co.
Slip Copy, 2005 WL 2620196 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3242158 (Trial Pleading) Defendant's Amended Answer and Counterclaims (Nov. 09, 2005)

• 2005 WL 2603883 (Trial Motion, Memorandum and Affidavit) Plaintiff Textron Innovations Inc.'s Brief in Opposition to Motion to Transfer Venue (Aug. 30, 2005)
• 2005 WL 2603569 (Trial Pleading) Answer (Aug. 29, 2005)
• 2005 WL 2603700 (Trial Motion, Memorandum and Affidavit) Toro's Reply to Textron's Brief in Opposition to Motion to Transfer Venue (Aug. 19, 2005)
• 2005 WL 2603699 (Trial Motion, Memorandum and Affidavit) Opening Brief Supporting Defendant Toro's 28 U.S.C. | 1404 (a) Motion to Transfer Venue to Minnesota (Aug. 16, 2005)
• 2005 WL 2385695 (Trial Pleading) Complaint (Jul. 12, 2005)
• 2005 WL 2912858 (Trial Pleading) Complaint (Jul. 12, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.