# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-90-JJF |
| | ) | |
| SANDOZ INC. and | ) | |
| NOVARTIS AG, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF, PFIZER INC'S OPENING BRIEF IN SUPPORT OF ITS RULE 12(f) MOTION TO STRIKE THE FIFTH AFFIRMATIVE DEFENSE IN DEFENDANT, SANDOZ INC.'S ANSWER OR ALTERNATIVE RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Pfizer Inc*

Dated: March 20, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.     NATURE AND STAGE OF PROCEEDINGS .................................................... 1

II.    STATEMENT OF FACTS ................................................................................... 1

III.   SUMMARY OF ARGUMENT ............................................................................ 2

IV.    ARGUMENT ....................................................................................................... 3

       A.     Rule 9(b) Requires That Inequitable Conduct Be
              Plead With Particularity .............................................................................. 3

       B.     Sandoz's Fifth Affirmative Defense Fails To Plead
              With Particularity ........................................................................................ 4

V.     CONCLUSION .................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*Agere Systems Guardian Corp. v.. Proxim, Inc.,*
    190 F. Supp.2d 726 (D. Del. 2002) ........................................................................ 3

*EMC Corp. v. Storage Tech. Corp.,*
    921 F. Supp. 1261 (D. Del. 1996) ........................................................................ 3

*Ferguson Beauregard/Logic Controls v. Mega Systems, LLC,*
    350 F.3d 1327 (Fed. Cir. 2003) .............................................................................. 3

*Martek Biosciences Corp. v. Nutrinova Inc.,*
    No. Civ.A. 03-896 GMS, 2004 WL 2297870 (D. Del. Oct. 8, 2004) ..................... 4

*Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.,*
    820 F. Supp. 150 (D. Del. 1992) ........................................................................... 4

*Seville Industrial Machine Corp. v. Southmost Machine Corp.,*
    742 F.2d 786 (3d Cir. 1984) ................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 12(e) ...................................................................................................... 3, 4

Fed. R. Civ. P. 12(f) ....................................................................................................... 3, 4

Fed. R. Civ. P. 9(b) .................................................................................................. 2, 3, 4, 5

## I.    NATURE AND STAGE OF PROCEEDINGS

On February 8, 2006, Pfizer Inc ("Pfizer") sued Sandoz Inc. ("Sandoz") and its Swiss parent, Novartis AG ("Novartis") in the United States District Court for the District of Delaware alleging infringement of Pfizer's U.S. Patent No. 6,977,243 ("the '243 patent") (D.I. 1). On March 6, 2006, Sandoz filed its Answer in this Court raising five affirmative defenses: (1) failure to state a claim upon which relief can be granted; (2) non-infringement of the '243 patent in the past; (3) non-infringement of the '243 patent in the present and future; (4) invalidity of the '243 patent; and (5) unenforceability of the '243 patent (D.I. 6 at ¶¶ 47-51). Because Sandoz has failed to plead any of the necessary facts and underlying theories in its fifth affirmative defense of "unenforceability", Pfizer hereby moves the Court to strike the defense pursuant to Rule 12(f) or, in the alternative, for a more definite statement pursuant to Rule 12(e).

## II.    STATEMENT OF FACTS

Pfizer owns the '243 patent, which is directed to crystalline azithromycin sesquihydrate. Azithromycin is a potent antibiotic for use in humans and animals. Sandoz is selling azithromycin products in the United States that Pfizer asserts infringe claims of the '243 patent. Pfizer also contends that Sandoz is selling the infringing azithromycin products under the direction, encouragement and thus active inducement of its parent company, Novartis. Accordingly, Pfizer sued Sandoz and Novartis in Delaware to protect its intellectual property, prevent future infringement and recover damages for past infringement.

1

Sandoz answered Pfizer's complaint on March 6. In the fifth affirmative defense in its Answer, Sandoz made the following allegation:

> "51. The '243 patent is unenforceable against Sandoz in view of Pfizer's representations, express and implied, to the United States Patent & Trademark Office in seeking to overcome the patent examiner's rejections of the claims as unpatentable." (D.I. 6, ¶ 51).

This bare allegation that the '243 patent is "unenforceable" provides no meaningful information as to the actual grounds for alleged unenforceability. Based on the pleading's reference to Pfizer's representations to the United States Patent and Trademark Office ("PTO") to overcome the Examiner's rejections, Pfizer can only speculate that Sandoz is alleging that Pfizer's '243 patent is unenforceable for inequitable conduct which occurred during the PTO prosecution, but the pleading is devoid of details regarding the two essential elements of inequitable conduct: materiality and intent. The simple fact that Pfizer is forced to guess the basis for Sandoz's allegation of unenforceability establishes that Sandoz's fifth affirmative defense fails to meet the requirements of the Federal Rules of Civil Procedure.

## III.    SUMMARY OF ARGUMENT

Rule 9(b) of the Federal Rules of Civil Procedure requires that all averments of fraud or mistake, which include all averments concerning alleged inequitable conduct before the PTO, be plead with particularity. Sandoz's fifth affirmative defense fails to satisfy this requirement. Sandoz merely asserts that the '243 patent is unenforceable in view of Pfizer's representations to the PTO, but it does not even pretend to explain what was represented, why it was incorrect, what was its materiality or what supports an intent to deceive. Accordingly, the fifth affirmative defense in Sandoz's answer should be

stricken pursuant to Fed. R. Civ. P. 12(f) as insufficient. Alternatively, if the Court

declines to strike the affirmative defense, Pfizer requests that Sandoz provide a more

definite statement pursuant to Fed. R. Civ. P. 12(e).

## IV.    ARGUMENT

### A.    Rule 9(b) Requires That Inequitable Conduct Be Plead With Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Fed. R. Civ. P. 9(b) is "to place the [parties] on notice of the precise misconduct with

which they are charged, and to safeguard [the parties] against spurious charges of

immoral and fraudulent behavior." *Seville Industrial Machine Corp. v. Southmost*

*Machine Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). The particularity requirement of Rule

9(b) applies to inequitable conduct charges. *EMC Corp. v. Storage Tech. Corp.*, 921 F.

Supp. 1261, 1263 (D. Del. 1996); *see also Ferguson Beauregard/Logic Controls v. Mega*

*Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (noting that "inequitable conduct,

while a broader concept than fraud, must be pled with particularity").

This Court has held that "in pleading an inequitable conduct claim, a party cannot

merely rely on vague allegations that broadly recite the elements of fraud ... ." *Agere*

*Systems Guardian Corp. v.. Proxim, Inc.*, 190 F. Supp.2d 726, 733-734 (D. Del. 2002))

(internal quotations omitted). While Rule 9(b) does not require that the pleading allege

the "date, time or place of the alleged inequitable conduct," if the pleading otherwise

gives the opponent notice of the precise misconduct alleged. *EMC Corp.*, 921 F. Supp. at

1263 (citing *Seville*, 742 F.2d at 791).

Pursuant to Rule 12(f), the Court may grant a motion to strike when a pleading contains "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 153-54 (D. Del. 1992) (citing Fed. R. Civ. P. 12(f)).

Rule 12(e) allows a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably be required to frame a responsive pleading." *Martek Biosciences Corp. v. Nutrinova Inc.*, No. Civ.A. 03-896 GMS, 2004 WL 2297870 at *2 (D. Del. Oct. 8, 2004) (quoting Fed. R. Civ. P. 12(e)). Courts have interpreted this language to mean that the motion should only be granted where the pleading is unintelligible, or the issues cannot be determined. *Martek Biosciences*, 2004 WL 2297870 at *2 (citations omitted). Courts have also granted the motion where the pleading has failed to satisfy the heightened pleading requirements of Rule 9(b). *Id.*

**B.     Sandoz's Fifth Affirmative Defense Fails To Plead With Particularity**

Sandoz's fifth affirmative defense does not plead inequitable conduct with particularity.  The defense merely alleges that the '243 patent is "unenforceable against Sandoz in view of Pfizer's representations ... to the United States Patent & Trademark Office in seeking to overcome the patent examiner's rejections of the claims as unpatentable." (D.I. 6 at ¶ 51).  Sandoz has not pled any facts pertaining to Pfizer's alleged wrongful statements, nor any facts pertaining to the alleged materiality of the alleged statements. Nor has Sandoz pled any facts giving rise to the inference that Pfizer's representative intended to deceive the PTO.  Thus, Pfizer can only guess the grounds,

4

assuming any even exist, upon which Sandoz's unenforceability claim may be based. Sandoz's unenforceability claim fails to provide the minimum information required by Rule 9(b), and the affirmative defense should be stricken. Alternatively, if the Court declines to strike the affirmative defense, Pfizer asks that Sandoz be required to provide a proper full and complete statement of the basis for its fifth affirmative defense.

## V.    CONCLUSION

For all the above reasons, Pfizer respectfully requests that the Court strike Sandoz's affirmative defense of unenforceability against the '243 patent, or, alternatively, order Sandoz to provide a more definite statement of the basis for its fifth affirmative defense.

CONNOLLY BOVE LODGE & HUTZ LLP


/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Daniel C. Mulveny (#3984)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
*Attorneys for Pfizer Inc*

453248_1.DOC

5

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2006, I electronically filed **PLAINTIFF,**

**PFIZER INC'S OPENING BRIEF IN SUPPORT OF ITS RULE 12(f) MOTION**

**TO STRIKE THE FIFTH AFFIRMATIVE DEFENSE IN DEFENDANT, SANDOZ**

**INC.'S ANSWER OR ALTERNATIVE RULE 12(e) MOTION FOR MORE**

**DEFINITE STATEMENT** with the Clerk of Court using CM/ECF which will send

notification of such filing to the following:

> Frederick L. Cottrell, III
> Matthew W. King
> Richards, Layton & Finger
> One Rodney Square
> 920 N. King Street
> P.O. Box 551
> Wilmington, DE 19899

I hereby certify that on March 20, 2006, I have mailed by First Class Mail, the

document(s) to the following non-registered participants:

> Kelly L. Morron          Douglass C. Hochstetler
> Schiff Hardin LLP        Andrew M. Alul
> 623 Fifth Ave            Kathryn S. Devin
> 28th Floor               Schiff Hardin LLP
> New York, NY 10022       6600 Sears Tower
>                          Chicago, IL  60606

> /s/ Rudolf E. Hutz
> Rudolf E. Hutz (#484)
> Daniel C. Mulveny (#3984)
> 1007 N. Orange Street
> P. O. Box 2207
> Wilmington, DE 19899-2207
> (302) 658-9141
> *Attorneys for Pfizer Inc*

6

**EXHIBIT 1**

Westlaw.

Not Reported in F.Supp.2d
Page 1

Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
MARTEK BIOSCIENCES CORPORATION,
Plaintiff,
v.
NUTRINOVA INC., Nutrinova Nutrition
Specialties & Food Ingredients GMBH, Celanese
Ventures GMBH, and Celanese AG, Defendants.
**No. Civ.A. 03-896 GMS.**

Oct. 8, 2004.

Steven J. Balick, Ashby & Geddes, Wilmington,
DE, for Plaintiff.
George Pazuniak, Oleh V. Bilynsky, Connolly,
Bove, Lodge & Hutz, Wilmington, DE, for
Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 The plaintiff, Martek Biosciences Corporation ("
Martek"), filed the above-captioned action against
Nutrinova Inc. and Nutrinova Nutrition Specialties
& Food Ingredients GMBH (collectively, "
Nutrinova") on September 23, 2003. FN1 In its
complaint, Martek alleges that the defendant is
infringing United States Patent Nos. 6,607,900 (the
" '900 patent") and 6,451,567 (the " '567 patent").

> FN1. Celanese Ventures GMBH and
> Celanese AG have been dismissed as
> defendants in this case.

Presently before the court is Martek's motion to
strike paragraph 26 of the affirmative defenses, and
to dismiss paragraph 48 of Count I and Count III of

Nutrinova's counterclaim. FN2 For the following
reasons, the court will deny Martek's motion to
strike, but grant Martek's motion for a more definite
statement. In addition, the court will grant in part
and deny in part Martek's request to dismiss Count
III of Nutrinova's counterclaim.

> FN2. Martek titles its motion as a motion
> to strike. However, in its Opening Brief in
> support of the motion (D.I.12), Martek
> requests, in the alternative, that the court
> require Nutrinova to provide a more
> definite statement pursuant to Rule 12(e)
> of the Federal Rules of Civil Procedure.
> The court will consider both of Martek's
> motions.

II. BACKGROUND

Martek is a Delaware Corporation that develops and
sells products from microalgae, including
nutritional fatty acids such as the omega-3 fatty
acid, docosahexaenoic acid ("DHA"). This case
involves two of Martek's patents relating to DHA.
DHA is a major and essential structural fatty acid,
necessary for the development of organs including
the eye retina, the brain, and the heart. The human
body produces DHA in only limited quantities,
creating a need in the medical science community to
find alternate sources of DHA or develop processes
to produce it. Martek recognized this need and
developed microalgae processes to make DHA and
products relating to its processes. Its patent
portfolio consists of nearly fifty United States
patents as well as foreign patents, including many
directed to its DHA products.

Nutrinova is a Delaware Corporation that developed
a microalgae process to make DHA, and currently
markets its product under the brand name
DHActive0. After Nurtinova began marketing
DHActive0, Martek initiated discussions with
Nutrinova regarding its potentially infringing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

activities. On May 27, 2003, Martek sent an email to Nutrinova, citing its patent portfolio and requesting to discuss the situation. (D.I.13, Exh. 2). Nutrinova replied, requesting information regarding the patents and claims that Martek believed Nutrinova was potentially infringing. On June 18, 2003, Martek responded, via email, citing eighteen specific patents from its portfolio that it believed were relevant to the discussions. (*Id.* Exh. 4). Nutrinova reviewed the list and concluded that the patents offered by Martek were either not infringed or were invalid. Nutrinova then requested a meeting with Martek to discuss the situation further. (*Id.* Exh. 5) According to Martek, the parties were unable to amicably settle the matter. On September 23, 2003, Martek filed its complaint.

### III. STANDARDS OF REVIEW

#### A. Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to strike "any insufficient defense" from any pleading. Motions to strike affirmative defenses are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 697 F.Supp. 1360, 1362 (D.Del.1988). When ruling on such a motion, "the [c]ourt must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law." *Id.* Furthermore, courts prefer not to grant a motion to strike "unless it appears to a certainty that ... [the movant] would succeed despite any statement of the facts which could be proved in support of the defense." *Greiff v. T.I.C. Enterprises, L.L.C.,* No. Civ. 03-882, 2004 WL 115553 (D.Del. Jan. 9, 2004).

#### B. Rule 12(e)

\*2 Rule 12(e) allows a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e); *see Schaedler v. Reading Eagle Publication,* 370 F.2d 795, 798 (3d Cir.1967)

(same). Courts have interpreted this language to mean that the motion should only be granted where the pleading is unintelligible, *see CFMT, Inc. v. Yieldup International Corp.,* No.CIV.A.95-549, 1996 WL 33140642, at *1 (D.Del. Apr.5, 1996); *United States v. Bd. of Harbor Comm'rs,* 73 F.R.D. 460, 462 (D.Del.1997), or the issues cannot be determined. *See Fischer & Porter Co. v. Sheffield Corp.,* 31 F.R.D. 534, 536 (D.Del.1962). Courts have also granted the motion where the pleading has failed to satisfy the heightened pleading requirements of Rule 9(b). *See EMC Corp. v. Storage Tech. Corp.,* 921 F.Supp. 1261 (D.Del.1996).

#### C. Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can take two forms: it can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Federal Savings and Loan,* 549 F.2d 884, 891 (3d Cir.1977). When reviewing a facial attack the court must consider the allegations of the complaint as true, making all reasonable inferences in the plaintiff's favor. *Id. See also Barrister v. Wendy's Int'l, Inc.,* 1993 WL 293896, *3 (E.D.Pa. July 30, 1993).

When reviewing a factual attack, however, the court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case. *Mortensen,* 549 F.2d at 891. Therefore, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims for itself. *Id.* The plaintiff bears the burden to prove that jurisdiction does in fact exist. *Id.* However, the plaintiff's burden is relatively light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 3

Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

implausible, foreclosed by prior decisions of this
Court, or otherwise completely devoid of merit as to
not involve a federal controversy.' " *Kulick v.
Pocono Downs Racing Ass'n,* 816 F.2d 895, 899
(3d Cir.1987) (quoting *Oneida Indian Nation v.
County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772,
39 L.Ed.2d 73 (1974)).

IV. DISCUSSION

A. Paragraph 26 of Nutrinova's Affirmative
Defenses and Paragraph 48 of Nutrinova's
Counterclaim [FN3]

FN3. Paragraph 26 of the affirmative
defenses states:
26. The '567 patent is unenforceable,
because of the applicants' inequitable
conduct in the prosecution of the patent. In
particular, Martek prepared, filed and
prosecuted a patent application, Serial
Number 07/580,778 filed on September
11, 1990, which issued as the Martek '567
patent. That application was prepared,
filed and prosecuted with material false
data. The applicants knew that the
application contained false data, but
nevertheless filed, continued to prosecute,
and convinced the Patent Office to issue
the '567 patent based on such material
false data. Such misconduct constitutes
inequitable conduct, and renders the '567
patent and all affiliated patents
unenforceable.
Paragraph 48 of Count I of the
counterclaim states:
48. The '567 patent is unenforceable,
because the applicants' inequitable conduct
in the prosecution of the patent. In
particular, Martek prepared, filed and
prosecuted a patent application, Serial
Number 07/580,778 filed on September
11, 1990, (the "778 application"), which is
a parent application from which Martek's
'567 patent on its face claims priority. A
claim for priority from the 778 application

is also made in a declaration filed by the
inventors in connection with the '567 patent
. The 778 application was prepared, filed
and prosecuted with material false data.
The applicants knew that the application
contained false data, but nevertheless filed,
continued to prosecute, and convinced the
Patent Office to issue the '567 patent based
on such material false data. Such
misconduct constitutes inequitable
conduct, and renders the '567 patent and
all affiliated patents unenforceable.

As one of its affirmative defenses, Nutrinova
alleges that Martek engaged in inequitable conduct
in acquiring the '567 patent. Martek moves to strike
the defense, as well as paragraph 48 of Nutrinova's
counterclaim, which is predicated on the inequitable
conduct defense, on the grounds that they do not
meet the pleading requirements of Rule 9(b) of the
Federal Rules of Civil Procedure. Specifically,
Martek claims that the language in Nutrinova's
affirmative defense and counterclaim fails to
provide any specifics concerning Martek's
inequitable conduct in obtaining the '567 patent. In
response, Nutrinova asserts that its pleading is not "
vague or conclusory." Further, Nutrinova asserts
that there is no authority that requires a pleading
that claims inequitable conduct to identify specific
falsified data, describe why it is false, or state why
it was material, as Martek suggests it should have
done.

*3 The parties do not dispute that the particularity
requirement of Rule 9(b) applies to inequitable
conduct charges. In the context of alleged
inequitable conduct before the PTO during a patent
prosecution, Rule 9(b) does not require that a party
plead the "date, place or time" of the fraud, so long
as that party uses an "alternative means of injecting
precision and some measure of substantiation into
their allegations of fraud." *Seville Indus. Mach.
Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791
(3d Cir.1984), *cert denied,* 469 U.S. 1211, 105
S.Ct. 1179, 84 L.Ed.2d 327 (1985); *see EMC Corp.
v. Storage Tech. Corp.,* 921 F.Supp. 1261, 1262-63
(D.Del.1996). Nutrinova's pleadings do not pass the
*Seville* test. Even if Nutrinova did not have to
describe why the data Martek submitted to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                            Page 4

Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Patent Office was false or state why that data was material, it should have identified the data in its affirmative defense and counterclaim. [FN4] The court, therefore, finds that Nutrinova has failed to plead facts with sufficient particularity in paragraph 26 of its affirmative defenses and paragraph 48 of its counterclaim to establish a charge of inequitable conduct based on Martek's alleged submission of false data during the prosecution of the '567 patent. [FN5]

> FN4. The court notes that Nutrinova provided a more detailed description of its inequitable conduct claim in a letter to Martek, stating that Martek's patent application "contains examples which do not represent actual data, and they are written in past tense." (D.I.13, Exh. 1). The court will not determine whether the information contained in Nutrinova's letter is sufficient to meet the Rule 9(b) pleading requirements. The court uses the letter only to point out that Nutrinova possesses more detailed information regarding Martek's alleged inequitable conduct.

> FN5. Because Nutrinova has not adequately pled its inequitable conduct claim, its pleading cannot be salvaged by future discovery. *EMC Corp.,* 921 F.Supp. at 1264 (concluding that the plaintiff could not "use its interrogatory responses to fulfill the particularity requirements of Rule 9(b)").

In the present case, it does not appear to a certainty that Martek would succeed despite any statement of facts which could be proved in support of Nutrinova's inequitable conduct defense. Thus, the court does not conclude that the proper remedy in this case is to strike Nutrinova's pleadings. However, Martek has requested, in the alternative, that the court require Nutrinova to provide a more definite statement. The court finds that Nutrinova's inequitable conduct pleadings fail to satisfy the Rule 9(b) requirements in that they are so vague and ambiguous that Martek cannot draft a responsive pleading. Therefore, the court will grant Martek's

request for a more definite statement.

### B. Count III of Nutrinova's Counterclaim

Martek next asserts that the court should dismiss Count III of Nutrinova's counterclaim for lack of subject jurisdiction. In its motion, Martek attacks Nutrinova's complaint on factual grounds. Thus, the court will consider evidence outside of the pleadings to determine whether subject matter jurisdiction exists. Nutrinova has the burden of proving that jurisdiction exists and must demonstrate that its claim is not wholly insubstantial, frivolous, devoid of merit, or made for the purpose of obtaining jurisdiction. *See Kulick,* 816 F.2d at 899. Count III is a declaratory judgment claim. [FN6] Martek argues that the facts of the case do not give rise to declaratory judgment jurisdiction. The Declaratory Judgment Act provides:

> FN6. Martek reproduces all of Count III in its Opening Brief in support of its motion (D.I. 12, at 7). The court, however, will paraphrase the language. Count III entitled, Non-Liability as to DHActive0 and Nutrinova Process, essentially asks the court to conclude that Nutrinova's activities do not infringe and that it is not liable for infringement of any valid and enforceable right of Martek, including any valid and enforceable claim of any issued United States patent owned by Martek.

In case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
*\*4* 28 U.S.C. § 2201(a). The federal courts have jurisdiction over a declaratory judgment action only if an "actual controversy" exists between the parties at the time the plaintiff files its complaint and throughout the pending action. *Shell Oil Co. v. Amoco Corp.,* 870 F.2d 885, 887 (Fed.Cir.1992). In the patent context, the United States Court of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Appeals for the Federal Circuit has articulated a two-part test to determine whether an actual controversy exists: (1) an explicit threat or other act by the patentee creating in the declaratory plaintiff a reasonable apprehension that the patentee will initiate suit; and (2) present activity which could constitute infringement or concrete steps taken with the intent to infringe. *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993). Martek asserts that Nutrinova does not satisfy the first prong of *BP Chemicals* because Nutrinova's broad claims do not cite the specific patents or rights at issue, and could potentially encompass all of Martek's intellectual property, including its nearly fifty U.S. patents and its non-patent intellectual property rights. In addition, Martek contends that Nutrinova has not alleged, and cannot allege, facts necessary to establish that Martek's conduct placed Nutrinova in reasonable apprehension of an infringement suit over such broad subject matter. Lastly, Martek asserts that even if the court determines that an actual controversy exists, considerations of justice and efficiency require the court to decline declaratory judgment jurisdiction over Count III. [FN7]

> FN7. The court's exercise of jurisdiction over a declaratory judgment action is discretionary. *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 634 (Fed.Cir.1991).

Nutrinova argues that its declaratory judgment counterclaim is not broad and open-ended because it seeks a declaration only as to the one specific product, DHActive0, made by the one specific process that is the subject of Martek's complaint. Nutrinova further argues that an actual controversy exists because Martek has already brought a suit for infringement against it for making DHActive0. Moreover, Nutrinova contends that even if Martek had not initiated this lawsuit, its written assertions to Nutrinova constitute a basis for a declaratory judgment action under *Dainippon Screen Mfg. Co. v. CFMT, Inc.,* 142 F.3d 1266 (Fed.Cir.1998) (affirming jurisdiction because a voice-mail to the defendant, stating that the patentee intended to protect its rights, created a reasonable apprehension

in the defendant that the patentee would sue).

The parties do not dispute whether there is "present activity which could constitute infringement." [FN8] Thus, the court must determine whether Martek's conduct has been such that it caused Nutrinova to have an objectively reasonable apprehension of being sued by Martek at the time the declaratory judgment action was filed. In making its determination, the court must consider the totality of the circumstances. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 (Fed.Cir.1992).

> FN8. Nevertheless, the court finds that Nutrinova satisfies the "present activity" prong of *BP Chemicals* because it engages in the manufacture and production of DHActive0, which is sufficiently similar to Martek's patents. *See Millipore Corp. v. Univ. Patents, Inc.,* 682 F.Supp. 227, 232 (D.Del.1987).

The court agrees with Nutrinova that the litigious history between the parties and Martek's written assertions weigh in favor of a finding that Nutrinova has a reasonable apprehension of suit. The Federal Circuit has stated that "the question is whether the relationship between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another." *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 812 (Fed.Cir.1996). The court also cautioned that the " test for finding a 'controversy' ... is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." *Id.*

*5 In the present case, even though Martek did not explicitly threaten to bring an infringement suit in any correspondence with Nutrinova, the court concludes that Martek's June 18, 2003 email (D.I.13, Exh. 4) created a reasonable apprehension in Nutrinova that Martek would sue. In fact, Martek filed its complaint on September 23, 2003, approximately three months after its email to Nutrinova and one month after Nutrinova's request for a meeting. Nevertheless, Martek's June 18, 2003

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

email included a list of eighteen of its nearly fifty U.S. patents that it selected as relevant to Nutrinova's conduct. Beyond that, the email discussed Martek's patents and patent portfolio in a general sense. Martek's email created a reasonable apprehension in Nutrinova that Martek only would sue for infringement of one or more of the eighteen listed patents, not "any" or all of its patents. Thus, Nutrinova's claim for non-liability as to "any valid and enforceable claim of any issued United States patent owned by Martek," and "any valid and enforceable right of Martek" is too broad. Only those patents referenced in the June 18, 2003 email are proper subjects for Nutrinova's declaratory judgment claim. The court, therefore, will dismiss Count III of Nutrinova's counterclaim as it relates to Martek patents other than the eighteen listed in the June 18, 2003 email.

### ORDER

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:
1. The plaintiff's Motion to Strike Paragraph 26 of the Affirmative Defenses and Dismiss Paragraph 48 of Count I and Count III of the Counterclaims by Nutrinova and Nutrinova Specialties & Food Ingredients GMBH (D.I.11) is GRANTED in part and DENIED in part.
2. The plaintiff's Motion, in the alternative, For a More Definite Statement (D.I.12) is GRANTED.

D.Del.,2004.
Martek Biosciences Corp. v. Nutrinova Inc.
Not Reported in F.Supp.2d, 2004 WL 2297870 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2603748 (Trial Pleading) Third Amended Complaint and Demand for Jury Trial (Aug. 26, 2005)
• 2005 WL 2603554 (Trial Pleading) Martek Biosciences Corporation's Reply to Counterclaims by Nutrinova Inc. and Nutrinova Nutrition Specialties & Food Ingredients Gmbh (Aug. 11,

2005)
• 1:03cv00896 (Docket) (Sep. 23, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.